IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| RONALD P., | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:23-cv-00165 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MARTIN O'MALLEY, | ) | By: Hon. Thomas T. Cullen |
| Commissioner of Social Security, | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

This social security disability appeal was referred to the Honorable C. Kailani Memmer, United States Magistrate Judge, under 28 U.S.C. § 636(b)(1)(B) for proposed findings of fact and a recommended disposition. Judge Memmer filed a report and recommendation ("R&R") on February 21, 2024, recommending that this court affirm the Commissioner of Social Security's ("Commissioner") final decision denying Plaintiff Ronald P.'s ("Ronald") supplemental security income ("SSI") claim. Ronald filed an objection to the R&R, to which the Commissioner responded, making this matter ripe for the court's consideration. For the reasons discussed below, the court will overrule Ronald's objection, adopt Judge Memmer's R&R in its entirety, and affirm the Commissioner's final decision.

## I. BACKGROUND

On January 25, 2021, Ronald filed an application for SSI benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1383f (the "Act"). (R. 146–47 [ECF No. 7-1].) In

his application, Ronald alleged that he had been disabled since January 1, 2021.[1] He initially reported that sinus problems and high-blood pressure resulted in his disability. (*Id.* 170.)

The Commissioner denied Ronald's claim at the initial level of administrative review. (*Id.* 68.) At the reconsideration level, the Commissioner considered that medical examinations after Ronald's initial filing revealed that he had hepatitis and dyspnea on exertion—in addition to sinus problems and high-blood pressure—but still denied Ronald's claim. (*See id.* 70, 76.) Ronald then requested a hearing before an administrative law judge ("ALJ"); on April 5, 2022, ALJ Jeffrey J. Schueler held a telephonic hearing to consider Ronald's claim. (*See id.* 35–62.) Counsel represented Ronald at the hearing, during which the ALJ heard testimony from Ronald and a vocational expert. (*Id.*)

In a written decision dated June 13, 2022, the ALJ found that Ronald had "not engaged in substantial gainful activity" since he applied for SSI and suffered from "the following severe impairments: hypertension; hepatitis C; mild cardiac dysfunction; dyspnea on exertion; post-traumatic stress disorder; depression; and anxiety." (*Id.* 20.) The ALJ determined, however, that these impairments—individually or in combination—did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*) Next, the ALJ concluded—after carefully considering the entire record—that Ronald had the residual functional capacity ("RFC") "to perform medium work . . . except [he] is limited to simple, routine, repetitive tasks, in a work environment free of fast-paced production

---

[1] Although immaterial to the instant decision, the court notes that both January 1, 2021, and January 21, 2021, are listed as Ronald's alleged disability onset date in the record. (*Compare* R. 70, 76, 77, 93, 148, 159, 166, 185, 194 (listing January 1), *with* R. 63, 68, 69, 82, 159, 170, 175 (listing January 21).) The parties' briefs and R&R, however, each refer to January 1, 2021, as the alleged onset date. (Pl.'s Br. at 1 [ECF No. 13]; Def.'s Br. at 2 [ECF No. 15]; R&R at 3 [ECF No. 20].) The court therefore does the same.

requirements . . . involving only simple, work-related decisions, few if any workplace change[s], and occasional interaction with the public or coworkers." (*Id.* 22.) Although Ronald had no past relevant work experience, the ALJ found that Ronald could perform jobs that exist in sufficient numbers in the national economy, such as an industrial cleaner, hand packager, and laundry laborer. (*Id.* 27–28.) Accordingly, the ALJ determined that Ronald was not disabled for purposes of the Act. (*Id.* 28.) The Appeals Council subsequently denied Ronald's appeal, making the ALJ's decision the final decision of the Commissioner. (*Id.* 1.)

On March 20, 2023, Ronald filed suit in this court to challenge the final decision of the Commissioner. (ECF No. 2.) By standing order and under the authority granted in 28 U.S.C. § 636(b)(1)(B), the court referred the case to Judge Memmer. (ECF No. 18.) After full briefing by both Ronald and the Commissioner (ECF Nos. 13, 15, 19), Judge Memmer filed her R&R, recommending that the court affirm the Commissioner's final decision denying Ronald's SSI claim. (R&R at 1.) Ronald timely filed an objection to the R&R (ECF No. 21), and the Commissioner responded (ECF No. 22), making the matter ripe for review.

## II.   STANDARD OF REVIEW

It is not the role of a federal court to make administrative disability decisions. Rather, judicial review of disability cases is limited to determining whether substantial evidence supports the Commissioner's conclusion that the plaintiff failed to meet his burden of proving disability. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In so doing, the court may neither undertake a *de novo* review of the Commissioner's decision nor re-weigh the evidence of record. *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992). "Where conflicting evidence allows

reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (cleaned up).

Substantial evidence is not a "large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). But it is more than a mere scintilla and somewhat less than a preponderance. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The threshold is not a high bar. *Id.*

Nonetheless, an "ALJ must adequately explain his reasoning" to allow the court to "engage in a meaningful review." *Woods v. Berryhill*, 888 F.3d 686, 692–93 (4th Cir. 2018), *superseded on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4th 872 (4th Cir. 2023). "Indeed, [Fourth Circuit] precedent makes clear that meaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). Instead, the ALJ's decision must "build an accurate and logical bridge from the evidence to his conclusion." *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (cleaned up). If it does so and is supported by substantial evidence, the decision must be upheld. *See id.* at 186, 189; 42 U.S.C. § 405(g).

### III. RONALD'S OBJECTION

Ronald raises a single objection for the court's review: the R&R incorrectly determined that the ALJ properly articulated his consistency analysis for Morgan Jackson, PA's ("PA

Jackson") opinion.[2] (Pl.'s Obj. at 1 [ECF No. 21].) PA Jackson performed a consultative examination for Ronald on May 8, 2021, to evaluate his physical impairments and determine possible disability benefits. (*See* R. 24, 285.) Finding the ALJ's consistency analysis sufficient and supported by substantial evidence, the court will overrule Ronald's objection.

When determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability; (2) consistency; (3) the relationship the medical source has with the claimant, including the (i) length of the treatment relationship, (ii) frequency of examinations, (iii) purpose of the treatment relationship, (iv) extent of the treatment relationship, and (v) examining relationship; (4) specialization; and (5) other factors. 20 C.F.R. § 404.1520c. "The factors of supportability . . . and consistency . . . are the most important" and must be addressed for each medical opinion in the record. *Id.* § 404.1520c(b)(2); *see Greear v. Kijakazi*, No. 2:21-cv-00017, 2022 WL 4279730, at *3 (W.D. Va. Sept. 15, 2022). "Supportability is the degree to which a provider supports [his or her] opinion with relevant, objective medical evidence and explanation, and consistency is the degree to which a provider's opinion is consistent with the evidence of other medical and non-medical sources in the record." *Oakes v. Kijakazi*, 70 F.4th 207, 212 (4th Cir. 2023) (citing 20 C.F.R. § 404.1520c(c)(1)–(2)).

Ronald only challenges the adequacy of the ALJ's consistency analysis for PA Jackson's opinion. (Pl.'s Obj. at 1.) Ronald asserts that the ALJ erred by merely summarizing the record then stating his conclusion that PA Jackson's opinion was inconsistent with other evidence

---

[2] Detailed facts about Ronald's impairments and medical and procedural history can be found in the R&R and administrative transcript; they will not be repeated here unless relevant to this objection.

without "build[ing] an accurate and logical bridge from the evidence to [his] conclusion." (Pl.'s Obj. at 2 (quoting *Monroe*, 826 F.3d at 189.) The court disagrees.

In the three pages immediately preceding the consistency analysis for PA Jackson's opinion, the ALJ examined Ronald's hearing testimony and the record evidence from his various medical providers. (*See* R. 23–25.) The ALJ then summarized PA Jackson's belief that Ronald could occasionally carry up to 50 pounds; frequently lift and carry up to 20 pounds; stand and walk for about four hours in an 8-hour workday; frequently perform upper extremity manipulations; and occasionally perform the postural activities of bending, stooping, kneeling, and squatting. (*Id.* 26; *see id.* 289–90.) The ALJ also noted PA Jackson's findings that Ronald "had mild tenderness in [his] right upper quadrant" and "dyspnea on exertion." (*Id.* 26; *see id.* 289.)

Following this detailed summary, the ALJ evaluated the consistency of PA Jackson's opinion, pointing to five reasons, by the court's count, why the opinion was inconsistent with the record evidence overall. First, the ALJ noted that Ronald "did not have respiratory abnormalities . . . in [his] primary care provider records," which was inconsistent with the exertional limitations set forth by PA Jackson. (*Id.* 26.) Second, PA Jackson's finding of "mild tenderness in the right upper quadrant" was inconsistent with Ronald not generally complaining of abdominal pain elsewhere in the record. (*Id.*) Third, Ronald's reported exercise routine in December 2021—running and doing push-ups—was inconsistent with PA Jackson's exertional limitations for him. (*Id.*) Fourth, the ALJ found the lack of other exertional and postural limitations in the record were inconsistent with PA Jackson's limitations. (*Id.*) Fifth, the ALJ noted that PA Jackson's opinion was inconsistent with Ronald's "generally

normal primary care provider records" and "limited cardiology records," which the ALJ had previously summarized. (*Id.*) To be sure, the ALJ also considered Ronald's "mild cardiac abnormalities later in the record" as being consistent with PA Jackson's opinion, but on balance, the ALJ concluded that PA Jackson's opinion was "not consistent" with the other record evidence. (*Id.*)

According to Ronald, this analysis was inadequate because it did not include enough detail or rehash the contrary record evidence in the same paragraph where the ALJ determined PA Jackson's opinion was inconsistent. (*See* Pl.'s Obj. at 2.) This argument, however, ignores that the ALJ's opinion must be "read . . . as a whole." *Keene v. Berryhill*, 732 F. App' x 174, 177 (4th Cir. 2018). And as the R&R correctly points out, "the ALJ need only review medical evidence once in [the] decision." (R&R at 11 (quoting *McCartney v. Apfel*, 28 F. App'x 277, 279 (4th Cir. 2002)).)

Here, the ALJ reviewed Ronald's medical assessments and testimony, in detail, immediately before articulating how PA Jackson's opinion was inconsistent with the other record evidence. (*See* R. 23–26.) Reading the opinion as a whole, as it must, the court has no trouble "trac[ing] the path" of the ALJ's reasoning from the evidence to his conclusion that PA Jackson's opinion is inconsistent with the other parts of the record. *Todd A. v. Kijakazi*, No. 3:20-cv-00594, 2021 WL 5348668, at *5 (E.D. Va. Nov. 16, 2021) (citing Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5858 (Jan. 18, 2017)). Similarly, the ALJ's decision does not leave the court guessing as to how the ALJ arrived at his conclusion, nor does it frustrate meaningful review of that conclusion. *Contra Mascio v. Colvin*, 780 F.3d 632, 636–37 (4th Cir. 2015). Of course—as Judge Memmer noted in

calling certain of the ALJ's statements "somewhat conclusory" (R&R at 11)—the ALJ's opinion "could be more descriptive," but that argument could be raised about many otherwise sound administrative decisions and does not justify remanding the matter to the Commissioner. *See Hillman v. Kijakazi*, No. 1:20-cv-00237, 2021 WL 3824685, at *6 (W.D.N.C. Aug. 26, 2021); *cf. Reid v. Comm'r of Soc. Sec. Admin.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Russell v. Chater*, No. 94–2371, 1995 WL 417576, at *3 (4th Cir. July 7, 1995)) (noting that the ALJ is not required to undertake an "exhaustive point-by-point discussion"). Accordingly, the court finds that the ALJ's consistency analysis of PA Jackson's opinion was sufficient. *See Todd A.*, 2021 WL 5348668, at *6–8 (finding that an ALJ's analysis with a similar level of detail "properly addressed the consistency factor" for a medical opinion where the ALJ discussed the record evidence in the preceding pages).

The court also rejects Ronald's argument that the R&R is "nothing more than a *post-hoc* rationalization that attempts to articulate a consistency factor analysis where the ALJ failed." (Pl.'s Obj. at 3.) The R&R summarizes the ALJ's decision to explain why the consistency analysis of PA Jackson's opinion passes muster. (*See* R&R at 11–12.) It does not conjure up reasons from the record that the ALJ failed to consider and discuss. That type of confined review—as the case Ronald cites in support of this argument indicates—is not a *post hoc* rationalization. *See Brown v. Kijakazi*, No. 4:21-cv-04051, 2022 WL 12350625, at *8 n.6 (D.S.C. Oct. 21, 2022).

At bottom, the ALJ "buil[t] an accurate and logical bridge" from the evidence to his conclusion that PA Jackson's opinion was inconsistent with the record. *Monroe*, 826 F.3d at 189. And the ALJ's thorough analysis of that opinion and its inconsistencies establishes that

substantial evidence supports his conclusion. The court will therefore overrule Ronald's objection.

### IV. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's consistency analysis of PA Jackson's opinion applied the proper legal standard and is supported by substantial evidence. As such, Ronald's objection will be overruled, Judge Memmer's R&R will be adopted in its entirety, and the Commissioner's final decision will be affirmed.

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 27th day of March, 2024.

/s/ Thomas T. Cullen
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE